922 So.2d 768 (2006)
LAKE BISTINEAU PRESERVATION SOCIETY, INC., and H.F. Anderson, Plaintiffs-Appellants,
v.
James Marshall SEALES, II, Bennie James Fontenont, Jr., William Dwight Landreneau, Secretary of the Department of Wildlife and Fisheries of the State of Louisiana, and the Department of Wildlife and Fisheries of the State of Louisiana, Defendants-Appellees.
No. 40,583-CA.
Court of Appeal of Louisiana, Second Circuit.
February 10, 2006.
*769 The Pesnell Law Firm by J. Whitney Pesnell, Billy R. Pesnell, Shreveport, for Appellants.
J. Schuyler Marvin, District Attorney, Patrick Richmond Jackson, Bossier Parish Attorney, for Intervenors/Appellees: Bienville Parish Police Jury, Webster Parish Police Jury, Bossier Parish Police Jury.
Charles C. Foti, Jr., Attorney General, Terry F. Hessick, Assistant Attorney General, Thomas Michael Landrum, LA Dept. of Wildlife and Fisheries, for Defendants/Appellees: State of Louisiana, Dept. of Wildlife and Fisheries, William D. Landreneau, James Marshall Seales, II, and Bennie James Fontenont, Jr.
Before CARAWAY, MOORE and LOLLEY, JJ.
CARAWAY, J.
A citizens' group and property owner brought an action against the Department of Wildlife and Fisheries and three of its officials seeking declaratory and injunctive relief, penalties and damages arising from a three-year plan to lower and spray Lake Bistineau. After the trial court denied plaintiffs' request for a preliminary injunction to suspend the plan, this appeal ensued. Finding that the threatened activities which were the subject of the requested preliminary injunction have now ended, we dismiss the appeal as moot.

Facts
The suit is a sequel to plaintiffs' previously unsuccessful action to stop a three-year plan by the Department of Wildlife and Fisheries of the State of Louisiana ("DWF") for drawdowns of Lake Bistineau. In the prior case, Lake Bistineau Preservation Society, Inc. v. Wildlife and Fisheries Commission of the State of Louisiana, *770 39,369 (La.App.2d Cir.3/9/05), 895 So.2d 821, writ denied, 05-0939 (La.5/20/05), 902 So.2d 1057 (hereinafter "Lake Bistineau I"), this court affirmed the trial court's ruling denying a preliminary injunction that would have stopped the initial drawdown in 2004 and prevented the aggressive spraying of herbicides to kill the excessive aquatic vegetation that had choked the lake. The plaintiffs' alleged grounds for injunctive relief in Lake Bistineau I pertained to the issue of whether DWF gave sufficient consideration to the drawdowns' economic impact on lake businesses and recreational activities. The facts regarding the condition of the lake and the DWF's plan are fully examined in our prior opinion.
In 2005, the Lake Bistineau Preservation Society, Inc. and H.F. Anderson again filed suit against DWF and three of its officers for declaratory and injunctive relief and civil penalties based upon alleged violations of the Louisiana Environment Quality Act (La. R.S. 30:2001, et seq., hereinafter "LEQA") and Louisiana Water Control Law (La. R.S. 30:2071, et seq., hereinafter "LWCL") occurring during execution of the three-year Lake Bistineau Habitat Management Plan ("the Plan"). The Bossier, Webster and Bienville Parish Police Juries intervened in the action. Plaintiffs' new grounds to enjoin defendants from further implementation of the Plan allege that permits, water quality certifications and exemptions were required prior to the application of aquatic herbicides to the lake. These herbicides are allegedly hazardous to human health and the environment.
Plaintiffs sought a preliminary injunction prohibiting both the lowering of the lake and aquatic spraying, alleging the following:

14.
[T]he aquatic herbicides which the Defendants have sprayed and are spraying onto and into Lake Bistineau pursuant to the plan, including, but not limited to, 2,4-Dichlorophenoxyacetic acid ("2-4-D") and Aqua Kleen:
(a) are hazardous to human health and the environment, toxic to aquatic organisms, and tend to degrade the physical, chemical and biological integrity of the waters of Lake Bistineau; and
(b) will also result in the placement or addition of dead and dying vegetation into the waters of Lake Bistineau  vegetation which will consume or remove oxygen from the waters of Lake Bistineau as it decomposes and will tend to degrade the physical, chemical, and biological integrity of the waters of Lake Bistineau.

* * * * *

16.
Consequently, the Defendants were required to apply for and obtain permits from the Department of Environmental Quality of the State of Louisiana ("DEQ") before the Defendants began implementing or carrying out the plan by:
(a) drawing Lake Bistineau down between July 15 of one year and January 31 of the following year for three (3) consecutive years; and
(b) conducting aggressive spraying operations and activities in connection with the draw downs to eliminate or reduce the submerged, emergent, and floating aquatic plants that are present on Lake Bistineau.

* * * * *

20.
The Defendants have not obtained, and have failed or refused to apply for, permits *771 from DEQ authorizing the Defendants to implement the plan by drawing down Lake Bistineau and by spraying the aquatic herbicides onto and into Lake Bistineau.

* * * * *

26.
On March 30, 2005, Plaintiffs notified Hall Bohlinger, Secretary of DEQ, and each of the Defendants in writing, by certified mail, return receipt requested, that their failures and/or refusals to apply for and obtain permits, licenses, water quality certifications, and/or exemptions from DEQ which authorized the Defendants to draw down Lake Bistineau and conduct spraying operations or activities in connection with the draw down of Lake Bistineau before the Defendants began implementation of the plan constituted violations of the LEQA, the LWCL, and the regulations, pursuant to and in accordance with the provisions of La. R.S. 30:2026(B). A true and correct copy of the written notice that was sent to the Secretary of DEQ and to each of the Defendants on March 30, 2005, is attached hereto and made a part hereof as Exhibit "A."

* * * * *

28.
More than thirty (30) days have elapsed since March 30, 2005, the date on which Plaintiffs forwarded written notice of the Defendants' violations of the LEQA, the LWCL, and the regulations to the Secretary of DEQ and the Defendants, and since April 12, 2005, the date on which that written notice was received by the last of the Defendants.

* * * * *

31.
Plaintiffs are entitled to the issuance of both temporary and permanent injunctions against the Defendants which restrain, enjoin, and prohibit the Defendants, their attorneys, directors, officers, agents, representatives, and employees, and any persons or entities acting in concert or participation with them from taking any further steps or actions to implement or carry out the plan which the Defendants have adopted with respect to Lake Bistineau by lowering the water level of Lake Bistineau or spraying Lake Bistineau with aquatic herbicides until such time as the Defendants have complied with the requirements of the LEQA, the LWCL, and the regulations and have obtained the permits, licenses, water quality certifications, and/or exemptions necessary to take those steps or actions and implement or carry out the plan. The steps and actions which the Defendants have taken, are taking, and will continue to take to implement or carry out the plan constitute knowing, deliberate, intentional, and ongoing violations of the LEQA, the LWCL, and the regulations which should not be countenanced or tolerated.
A hearing on the preliminary injunction occurred before the beginning of the second scheduled drawdown on July 15, 2005. The plaintiffs presented the testimony of James Seales, a biologist manager with DWF. Seales supervised the implementation of the Plan. He testified that the aquatic vegetation in Lake Bistineau was aggressively sprayed with 2,4-D, an aquatic herbicide, in 2004. Seales did not personally supervise the spraying and did not know if the 2,4-D label requirements were followed. He said no permits were obtained prior to spraying.
The defendants presented the testimony of William Mahlburg, an expert in the fields of pesticide registration, evaluation and labeling, application requirements and environmental impact, including 2,4-D. Mahlburg testified that concentration of 2,4-D sprayed on Lake Bistineau was 1%. He stated that if the product is applied in *772 accordance with the label, water quality is not impacted. He estimated the half-life of the compound from between a couple of days to a few weeks.
Christopher Ratcliff testified for the Department of Environmental Quality (hereinafter "DEQ"). He explained that while the DEQ considers applications for permits to discharge pollutants into state waters, no permit is required for application of herbicides to aquatic vegetation in such waters. Even if DWF had applied for a permit to spray aquatic herbicides, DEQ would not have issued a permit. Ratcliff testified that DEQ adopted an interpretive statement promulgated by the Environmental Protection Agency in February 2005 reading as follows:
"... application of a pesticide to or over, including near, waters of the United States consistent with all relevant requirements under FIFRA, does not constitute the discharge of a pollutant that requires an NPDES permit under the Clean Water Act in the following two circumstances: (1) The application of pesticides directly to waters of the United States in order to control pests. Examples of such applications include applications to control ... aquatic weeds .... that are present in the waters of the United States."
DEQ adopts this statement to determine what is a pollutant for enforcement purposes.
After hearing the evidence, the trial court determined that no spraying permit was needed and denied the preliminary injunction request. The court rendered a signed judgment on July 12, 2005, and plaintiffs immediately filed for supervisory review with this court. Nevertheless, in seeking supervisory review of the ruling, the plaintiffs requested no expedited review of the matter. On July 14, 2005, in accordance with La. C.C.P. art. 3612(B), this court converted the writ to an ordinary appeal.
After lodging of the appeal, in response to this court's request for supplemental briefs on the issue of mootness, plaintiffs provided this court with a transcript of a hearing on a motion to compel discovery held on January 6, 2006, in which the defendants stipulated to the trial court that "Lake Bistineau will not be drawn down or drained during calendar year 2006." The plaintiffs objected to that portion of defendants' stipulation which had conceded that "the Habitat Management Plan for Lake Bistineau has been completed...." Plaintiffs also included a written stipulation by the defendants which mirrored the oral stipulation. The defendants' brief also indicates that the second drawdown has concluded and that the third drawdown under the Plan will not occur.

Discussion
A preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of the case. Lake Bistineau I, supra. The courts have generally held that a preliminary injunction is designed to preserve the status quo pending a trial of the issues on the merits of the case. Silliman Private School Corp. v. Shareholder Group, 00-0065 (La. App. 1st Cir.2/16/01), 789 So.2d 20, writ denied, 01-0594 (La.3/30/01), 788 So.2d 1194. Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue; this is accomplished by a prima facie showing that the party will prevail on the merits of the case. Concerned Citizens for Proper Planning, LLC. v. Parish of Tangipahoa, 04-0270 (La.App. 1st Cir.3/24/05), 906 So.2d 660. A showing of irreparable injury is not necessary, however, when the conduct sought *773 to be restrained is unconstitutional or unlawful, i.e. when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or violation of a constitutional right. Jurisich v. Jenkins, 99-0076 (La. 10/19/99), 749 So.2d 597. The denial or dissolution of a preliminary injunction should not be overturned on appeal absent a clear abuse of the trial court's great discretion. Lake Bistineau I, supra.
A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief. Wood v. Fontenot, 04-1174 (La.App. 3d Cir.3/2/05), 896 So.2d 323, writ denied, City of New Iberia v. New Iberia Fire and Police Civil Service Bd., 05-0801 (La.5/13/05), 902 So.2d 1023. It is well settled that an appellate court will not render advisory opinions from which no practical results can follow. Suire v. Lafayette City-Parish Consol. Government, 04-1459, 1460, 1466 (La.4/12/05), 907 So.2d 37. As a result, courts have established the rule that moot questions will not be considered on appeal. Wood v. Fontenot, supra. In cases of injunctive relief, it is clear that when the activity which a plaintiff seeks to enjoin has already occurred during the pendency of the suit, the matter is moot and the propriety of the trial court's action in denying or granting the injunction will not be considered by the reviewing court. Id. An appellate court, as a matter of judicial economy, has a right to consider the possibility of mootness on its own motion and to dismiss the appeal if the matter has in fact become moot. Cain v. Board of Supervisors of Elections, Ouachita Parish, 335 So.2d 711 (La.App. 2d Cir.1976), writ denied, 336 So.2d 871 (La.1976).
In brief, plaintiffs allege that the defendants have violated certain provisions of the LEQA and the LWCL. Plaintiffs contend that the introduction of 2,4-D into the waters of Lake Bistineau violates La. R.S. 30:2073(6) as "the introduction into waters of the state, by any means, ... of any substance in concentrations which tend to degrade the chemical, physical, biological, or radiological integrity of such waters...." Plaintiffs also contend that defendants were required to obtain a permit under La. R.S. 30:2075 which prohibits the discharge of any substance into the waters of the state without the appropriate permit, and La. R.S. 30:2076(A)(1)(a) which prohibits the discharge into the water of this state any waste or any other substance of any kind that will tend to cause water pollution in violation of any rule, order or regulation. Plaintiffs also cite LAC 33:IX.301B, which provides in pertinent part:
Without first obtaining a LWDPS permit from the department, (with the exceptions noted in LAC 33:IX.301D and F below), no person shall:
1. Discharge or allow to be discharged any pollutants into the waters of the state from any facility or activity.

* * * * *
Finally, plaintiffs allege that the actions of defendants violate the Louisiana Water Quality Standards which require that state waters be free from the effects of toxic substances. LAC 33:IX.1121.
As alleged in the petition, the DWF's actions which are sought to be enjoined involve the aggressive spraying of herbicides to kill the aquatic vegetation of Lake Bistineau. Those actions presumably continued for year two of the drawdown under the Plan from July 2005 through January 2006, while the ordinary delays of this appeal have occurred. Year three of the Plan apparently will not occur. Therefore, the actions that were threatened at the time of the July 2005 hearing, which are the subject matter of this preliminary *774 injunction, have already occurred and the claim for preliminary injunctive relief is now moot.
Moreover, from our review of the evidence, it is certainly not clear to us that an imminent threat to the environment was presented by the proposed spraying for year two of the Plan or, for that matter, for year one, when the plaintiffs did not even bother to make the permitting issue the focus of their injunctive request in Lake Bistineau I. The presence of a damaging toxin was not proven to be involved in this case. Likewise, the plaintiffs have not demonstrated on this record that a clear violation of prohibitory law has occurred under the technical regulatory scheme for the LWCL and the LEQA. Having given the DEQ notice well in advance of the start of phase two of the Plan, the plaintiffs have not included the DEQ in this action by seeking the mandamus or mandatory injunctive relief for the application of the permitting requirements they now suggest.
Nevertheless, our remand of this case, of course, does not preclude plaintiffs from prosecuting their pending claim for the declaratory judgment regarding the application of the LWCL and the LEQA and permanent injunctive relief preventing the application of herbicides into state waters. However, the trial court should consider the nonjoinder of DEQ pursuant to La. C.C.P. art. 927(B) if plaintiffs continue to neglect to directly involve the agency in this matter.
Accordingly, plaintiffs' appeal of the request for a preliminary injunction is dismissed as moot. The case is remanded for further proceedings consistent with this ruling. Costs of appeal are assessed to plaintiffs.
DISMISSED AS MOOT; REMANDED.