989 So.2d 855 (2008)
Kimberly Dawn CORY, Plaintiff-Appellee
v.
Dennis Michael CORY, Defendant-Appellant.
No. 43,447-JAC.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*857 Amy L. Greenwald, for Appellant.
Kimberly D. Cory, In Proper Person.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, J.
Defendant, Dennis Michael Cory, appeals a trial court judgment issuing an order of protection and awarding child support in the amount of $628.28 per month. For the reasons set forth herein, we dismiss as moot the appeal of the issuance of the order of protection. We affirm the trial court's finding that domestic abuse occurred, and we affirm the child support award in favor of Kimberly Dawn Cory.

FACTS
Plaintiff, Kimberly Dawn Cory ("Kimberly"), and defendant, Dennis Michael Cory ("Dennis"), are husband and wife with three minor children.[1] On November 29, 2007, Kimberly filed a petition for protection from abuse, pursuant to the Domestic Abuse Assistance Act, LSA-Ch.C. art. 1564, et seq., naming Dennis as the defendant. Kimberly alleged that Dennis had abused her by threatening her with bodily harm, threatening her life and threatening her with a weapon.[2] She specifically alleged that the following events transpired on November 27, 2007:
 Dennis returned to the matrimonial domicile "to move back in."
 Dennis refused to allow her to pack a bag so she could leave.
 She called the sheriff's department to assist her.
 She went "out to the road" to wait for sheriff's deputies.
 Dennis got into his truck and began "revving up" the motor.
 Kimberly "ran up the neighbor's drive."
 Dennis put the truck in reverse and began spinning gravel with the tires.
 Kimberly ran toward the house.
 Dennis chased Kimberly, yelling, "Run."
 Kimberly ran toward a neighbor's house.

*858  The couple's youngest child came between them and Dennis returned to his truck to wait for sheriff's deputies.
The trial court issued a temporary restraining order ("TRO") awarding Kimberly miscellaneous relief, including the use of the matrimonial domicile, custody of the children, use of a vehicle, and orders for Dennis to stay away from the parties' home and the children's schools. Additionally, the court specifically prohibited Dennis from having visitation with the children until a hearing was held.[3]
A hearing was held on December 14, 2007. During the hearing, Kimberly testified that on the day of the incident, Dennis was waiting for her inside the family home when she returned from picking her daughter up from school. When Dennis informed Kimberly that he was moving back into the home, she asked him to walk outside so she could pack her bags and leave. Kimberly stated that Dennis refused to leave and began "ranting and carrying on," so she called the sheriff's department and went outside to wait for them. While she was waiting for the deputies to arrive, she called her aunt, Christie Spears, on her cellular phone and remained on the phone with her throughout the episode. Kimberly testified that Dennis came out of the house, got into his truck and "started revving the motor up." He then put the truck in reverse and she ran into a neighbor's driveway. Dennis exited the truck, yelling at her. She first ran toward her house, but decided to run to a neighbor's house. The couple's youngest daughter came between them and screamed, "Daddy, Daddy!" Dennis then calmed down and waited in his truck for the sheriff's deputies to arrive. Kimberly testified that she believed Dennis was going to run over her with the truck. She also testified that Dennis had never harmed her in the past. Kimberly stated:
[Dennis] has threatened to do things. He justthat's what he does. He threatens and intimidates.... He has never hit me, but I'm scared. He's done everything but hit me.... He stands over me and hovers over me calling me names, threatening he's going to whip my ass, just completely intimidating.... He's threatened me. He does not just walk up ... He comes at you at a fast pace. He wants you to think that you're fixing to get hit.
Harley Cory, the couple's sixteen-year-old daughter, also testified. She stated that she saw her father revving the motor of his truck and she feared for her mother's safety. Harley also testified that she saw Dennis' truck moving in Kimberly's direction and Kimberly running. According to Harley, Dennis got out of the truck and walked toward Kimberly at a fast pace. She expressed that she had never seen Dennis hit Kimberly, stating, "He's never physically hurt my mother, but I'm not saying what he could and what he couldn't do."
Officer Russell Hicks of the Caddo Parish Sheriff's Department also testified. He stated that when he arrived at the couple's home on the day in question, Dennis was sitting in his truck talking to his youngest daughter, but Dennis left after he arrived. Kimberly was inside of the home "gathering items." Officer Russell testified that Kimberly did not mention the incident involving the truck or the alleged threats. He stated that when he arrived, "everybody seemed pretty calm."
*859 Dennis denied trying to run over Kimberly with the truck. He admitted revving his engine and backing the truck out of the driveway. He also admitted that Kimberly began to run, but he denied threatening or chasing her. Dennis testified that, on the day in question, he went to the house to do some work and noticed that the family's animals were not receiving proper care. Later, during his testimony Dennis stated that he went to the home "with the sole purpose to talk to [Kimberly], to explain that there's enough room for everyone to live there." He stated that Kimberly refused to talk to him and "refused to even explain to me what's happening."
Christie Spears was allowed to testify over Dennis' objection. Spears testified that she was on the phone with Kimberly during the incident in question. She stated that Kimberly was "just terrified" and expressed her fear that Dennis was going to run over her. Spears testified that she heard Kimberly state, "He's chasing me," and she could tell that Kimberly was running "by the way she was breathing." She testified that she did not hear Dennis say anything, but she heard the couple's youngest daughter screaming. Spears stated that she had never known Dennis to be abusive to Kimberly.
Following the hearing, the trial court issued an order of protection, prohibiting Dennis from "harming, harassing, following, stalking or communicating" with Kimberly in any fashion. The order also prohibited Dennis from coming within 100 yards of the family home, Kimberly's place of employment or the children's schools. The court stated:
To issue a protective order, it's required that I find evidence of preponderance of the evidence of the commission of an act defined as a crime of violence under Title XIV. Reasonable apprehension of a battery is an assault which is a crime of violence as defined in the statute. I believe there is abundant reasonable basis for this woman to believe that she was in reasonable fear of a battery and unlawful touching.... That reasonable fear is buttressed by the testimony of the aunt, which I find to be very credible despite her presence in the courtroom through some of the testimony, and the daughter.
* * *
The protective order statute is not just designed to keep people alive. It's designed to allow them to live without the fear, the constant fear of a battery being committed on them by their spouse in their own home.
The court also awarded Kimberly temporary custody of the two younger children, exclusive use of the family home with all household goods and furnishings and the use of a 1996 Chevrolet Suburban automobile. Dennis was ordered to pay child support in the amount of $628.28 per month, one-half of all out-of-pocket medical expenses for the two younger children and $252 in court costs associated with this second petition. Dennis was also ordered to attend anger management counseling. The order of protection was signed December 14, 2007 and the terms of the order remained in effect until June 14, 2008. Dennis appeals.

DISCUSSION
Initially, Dennis contends the trial court abused its discretion in issuing the order of protection. We note that the order of protection expired on June 14, 2008 by its own terms. Thus, the argument that the trial court erred in issuing the protective order is now moot.
An appellate court, as a matter of judicial economy, has a right to consider *860 the possibility of mootness on its own motion and to dismiss the appeal if the matter has in fact become moot. Lake Bistineau Preservation Soc., Inc. v. Seales, 40,583 (La.App. 2d Cir.2/10/06), 922 So.2d 768, writ denied, XXXX-XXXX (La.5/26/06), 930 So.2d 27; Cain v. Board of Supervisors of Elections, Ouachita Parish, 335 So.2d 711 (La.App. 2d Cir.1976), writ denied, 336 So.2d 871 (La.1976). A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief. Seales, supra; Wood v. Fontenot, XXXX-XXXX (La.App. 3d Cir.3/2/05), 896 So.2d 323, writ denied, XXXX-XXXX (La.5/13/05), 902 So.2d 1023. It is well settled that an appellate court will not render advisory opinions from which no practical results can follow. Suire v. Lafayette City-Parish Consol. Government, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La.4/12/05), 907 So.2d 37; Seales, supra. As a result, courts have established the rule that moot questions will not be considered on appeal. Seales, supra; Wood, supra. In cases of injunctive relief, it is clear that when the activity which a plaintiff seeks to enjoin has already occurred during the pendency of the suit, the matter is moot and the propriety of the trial court's action in denying or granting the injunction will not be considered by the reviewing court. Id.
As stated above, the order of protection in the instant case expired on June 14, 2008. Thus, we decline to consider the propriety of the trial court's action in issuing the order of protection. Accordingly, that portion of Dennis' appeal challenging the issuance of the order of protection is dismissed as moot.
The remaining issues for our consideration are whether "domestic abuse" occurred as defined by law and if so, whether the monthly child support award was properly calculated. If domestic abuse did not occur and no divorce action is pending, there was no basis to award child support.[4]

Domestic Abuse
LSA-Ch.C. art. 1565(1) provides:
"Domestic abuse" includes, but is not limited to, physical or sexual abuse and any offense against the person as defined in Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, except negligent injury and defamation, committed by one family or household member against another.
See also LSA-R.S. 46:2132(3).
Battery is the intentional use of force or violence upon the person of another. LSA-R.S. 14:33. Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery. LSA-R.S. 14:36. Aggravated assault is an assault committed with a dangerous weapon. LSA-R.S. 14:37.
A trial court's determination of domestic abuse is entitled to great weight and will not be disturbed on appeal absent a clear *861 abuse of discretion. Buchanan v. Langston, 36,520 (La.App. 2d Cir.9/18/02), 827 So.2d 1186; Stewart v. Stewart, 30,161 (La. App. 2d Cir.1/21/98), 705 So.2d 802, writ denied, 98-0748 (La.5/1/98), 718 So.2d 418. It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the instant case, Kimberly testified that although Dennis had never hit her, he had threatened "to whip [her] ass" and would intimidate her by walking toward her "at a fast pace," causing her to believe that he was going to hit her. She stated that on the day in question, Dennis got into his truck and revved the motor. She stated that he then put the truck in reverse while she was standing at the end of the driveway. She testified that she believed that Dennis was going to run over her with the truck. Dennis admitted that he revved the motor of the truck and backed out of the driveway. He testified that Kimberly ran from him, but he denied chasing her or doing anything to threaten her.
It is clear that the trial court found Kimberly's testimony credible. The court concluded that domestic abuse had occurred and Kimberly "was in reasonable fear of a battery and unlawful touching." Based upon our review of the record, we find that the trial court was not manifestly erroneous or clearly wrong in finding that domestic abuse had occurred.

Rule of Sequestration
Dennis also contends the trial court abused its discretion in allowing Christie Spears to testify after she violated the rule of sequestration. Dennis argues that Spears had the "unfair advantage" of hearing Kimberly's testimony before being dismissed from the courtroom. Moreover, according to Dennis, Spears was not present during the alleged incident and her testimony was merely a narrative of what she had heard over the telephone.
On its own motion the court may, and on request of a party, the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. LSA-C.E. art. 615(A).
A primary purpose underlying the rule of sequestration is to prevent the fact witnesses from being influenced by prior testimony. Iseah v. E.A. Conway Mem. Hosp., 591 So.2d 767 (La.App. 2d Cir. 1991); Hopkins v. Dept. of Highways, 350 So.2d 1271 (La.App. 3rd Cir.1977). Accordingly, where an individual witness violates the rule of sequestration, such will be considered harmless error where there is no evidence that the violation of sequestration has altered or influenced that witness's testimony. Iseah, supra; Henderson v. Eastman Whipstock Pilot, Inc., 524 So.2d 850 (La.App. 3rd Cir.1988), writ denied, 525 So.2d 1049 (La.1988); Barnhill v. Continental Dredging Co., 522 So.2d 146 (La.App. 3rd Cir.1988), writ denied, 526 So.2d 795 (La.1988).
Not every violation of a sequestration rule must result in a sanction, such as the exclusion of testimony. State v. Parker, 421 So.2d 834 (La.1982); Silvio v. Rogers, 580 So.2d 434 (La.App. 2d Cir. 1991); Williams v. State Farm Mut. Auto. Ins. Co., 524 So.2d 851 (La.App. 3d Cir. 1988). The trial judge may, in his discretion, refuse to disqualify an errant witness or impose any other sanction for a violation if the purpose of the sequestration has not been thwarted, or if there is no evidence that the witness' testimony has been tainted. Silvio, supra; State v. Marchese, *862 430 So.2d 1303 (La.App. 1st Cir.1983). The trial judge is in the best position to determine whether a violation of the sequestration rule has occurred resulting from any irregularity or ignorance of the sequestration rule, or whether the violation was intentional. Silvio, supra; Coutee v. American Druggist Ins. Co. of Cincinnati, 453 So.2d 314 (La.App. 3d Cir. 1984).
In this case, Dennis has made no specific allegations of prejudice resulting from Spears' failure to adhere to the order of sequestration, and it does not appear from the record that any prejudice occurred. Spears merely stated what she heard over the phone. She admitted that she did not hear Dennis threaten Kimberly and that she had never known Dennis to be abusive to Kimberly. There is no indication that Spears' testimony was tainted. Moreover, there is no evidence that the violation of the rule was intentional. Kimberly appeared in proper person and, as the trial court pointed out, she was "not as familiar with the consequences of that rule [of sequestration] and cannot fully appreciate it as if it were counseled." We conclude that the trial court did not abuse its discretion in allowing Spears to testify.

Child Support
Dennis contends the trial court erred in calculating the amount of child support owed. He argues that the child support award should have been calculated based on the amount of unemployment benefits he was receiving. Dennis further argues that because the court did not make an express finding that he was voluntarily unemployed or underemployed, awarding child support based upon his potential earning capacity was erroneous. In the alternative, Dennis argues that the amount of child support should have been based on his base salary from his last employer, i.e., $14 per hour.
LSA-C.C. art. 227 provides that parents, by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children. The obligation to support their children is conjoint upon the parents and each must contribute in proportion to his or her resources. Kirkpatrick v. Kirkpatrick, 41,851 (La.App. 2d Cir.1/24/07), 948 So.2d 390; Bagwell v. Bagwell, 35,728 (La.App. 2d Cir.3/8/02), 812 So.2d 854. The overriding factor in determining the amount of support is the best interest of the children. Id.
Child support obligations are to be determined by the combined adjusted gross incomes of both parties. LSA-R.S. 9:315.2. In calculating a child support obligation, if a party is voluntarily unemployed or underemployed, child support shall be based on a determination of income earning potential, unless the party is mentally or physically incapacitated. LSA-R.S. 9:315.11; Gardner v. Gardner, 41,655 (La. App. 2d Cir.12/27/06), 946 So.2d 321; Glover v. Glover, 28,493 (La.App. 2d Cir.6/26/96), 677 So.2d 659. Absent evidence that work is not available or is available only at a lower salary, the wage earned prior to voluntary unemployment is the best estimate of an obligated party's potential income. Gardner, supra; Havener v. Havener, 29,785 (La.App. 2d Cir.8/20/97), 700 So.2d 533.
Voluntary underemployment is a question of good faith of the obligor spouse. Wyatt v. Wyatt, 39,518 (La.App. 2d Cir. 4/6/05), 899 So.2d 788; Clark v. Clark, 34,314 (La.App. 2d Cir.11/1/00), 779 So.2d 822, writ denied, XXXX-XXXX (La.1/12/01), 781 So.2d 563. A parent is not deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment *863 resulted through no fault or neglect of the party. Wyatt, supra; Savage v. Savage, 36,138 (La.App. 2d Cir. 6/12/02), 821 So.2d 603. When determining whether a party is underemployed for purposes of calculating a child support obligation, the court shall consider that party's earning capacity in light of all circumstances. Peacock v. Peacock, 39,950 (La.App. 2d Cir.5/4/05), 903 So.2d 506. The trial court has wide discretion in resolving credibility issues, and whether the obligor parent is in good faith in reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the trial court's wide discretion. Wyatt, supra; Savage, supra; Clark, supra.
In this case, Dennis testified that, at the time of the hearing, he had been unemployed for approximately seven months and was receiving "$230-something" per week in unemployment compensation. The circumstances surrounding Dennis' unemployment were not discussed. However, Dennis testified that he was expecting to return to work as a diesel mechanic "starting December  the first of the year." He stated that he would "probably start out at ten dollars an hour until I prove myself." Dennis testified that he earned $14 per hour at his previous job and "worked a lot of hours." He denied knowing his approximate weekly, monthly or yearly earnings while employed at that job. He stated, "I just gave [Kimberly] my check."
Kimberly testified that Dennis earned approximately $30,000 to $40,000 per year at his previous job. She stated that she was self-employed and earned $500 per week.
After hearing the evidence, the trial court ordered Dennis to pay child support, stating:
I have calculated a monthly income of [Kimberly], $500 a week, to be $[2]166.66 per month. The average, which is the best evidence I have at this point subject to modification by submission of later evidence given the opportunity to do so, but I'm not going to set it on his unemployment. I'm not going to set it on what he thinks he might get in December. I'm going to set it on what the best evidence is, his average annual salary that he's capable of making and that's $35,000 a year, which is $2916.66 per month. That's a total monthly income of $5083.32. The basic child support for two children is $1095. His percentage is 57.37 percent of that. His child support obligation is $628.28.
First, we reject Dennis' argument that the trial court erred in failing to award child support based on the amount of his unemployment compensation. Although the circumstances surrounding Dennis' unemployment are not clear from the record, it is apparent that Dennis was not unemployable or incapable of being employed. By his own testimony, Dennis is quite capable of securing gainful employment.
After reviewing the record and the guidelines for the determination of child support set forth in LSA-R.S. 9:315.19, we conclude that the trial court did not err in calculating the amount of child support owed by Dennis. We reject Dennis' contention that the award should have been based on his previous base salary of $14 per hour. Dennis admitted that he "worked a lot of hours" and denied knowing his approximate earnings, stating, "I just gave [Kimberly] my check." The trial court concluded that Dennis' earning potential was $35,000, based on the salary earned at his previous job. We find no error in this conclusion. Therefore, we *864 affirm the award of child support to Kimberly in the amount of $628.28 per month.

CONCLUSION
For the foregoing reasons, we dismiss as moot the appeal of the issuance of the order of protection. We affirm the trial court's finding that domestic abuse occurred and the award of child support in the amount of $628.28 per month. Costs are assessed to appellant, Dennis Michael Cory.
APPEAL OF ORDER OF PROTECTION, DISMISSED AS MOOT; FINDING OF DOMESTIC ABUSE, AFFIRMED; CHILD SUPPORT AWARD, AFFIRMED.
NOTES
[1] At the time the petition was filed, the ages of the children were 17, 16 and 10. The seventeen-year-old child did not live in the family home.
[2] Kimberly had filed for a petition for a protective order on October 22, 2006, which was dismissed. This second petition was assigned the same docket number as the first, but included the letter "A" in the caption. The attorney states in brief that Caddo Parish Juvenile Court distinguishes subsequent petitions in this manner in order to count the number of petitions filed by the same parties. For example, if a third petition had been filed, its caption would have included the letter "B."
[3] The TRO was set to expire on December 7, 2007. However, since the hearing was not scheduled until December 14, 2007, another order was issued extending the expiration date to the date of the hearing.
[4] LSA-Ch.C. art. 1570 provides, in pertinent part:

A. The court may grant any protective order or approve any consent agreement to bring about a cessation of abuse of a party, any children, or any person alleged to be incompetent, which relief may include but is not limited to:
(1) Granting the relief enumerated in Article 1569.
(2) When there is a duty to support a party, any minor children, or any person alleged to be incompetent living in the residence or household, ordering payment of temporary support or provision of suitable housing for them.
(3) Awarding temporary custody of or establishing temporary visitation rights and conditions with regard to any children or person alleged to be incompetent.
(4) Ordering counseling or professional medical treatment for the defendant or the abused person, or both.
* * *