Dear Mr. Buatt:
You have requested an opinion from this Office as to the ability of the Atchafalaya Basin Program (a program with the Department of Natural Resources) to use public funds to facilitate a dredge project in Lake Henderson, within the Atchafalaya Basin. For the reasons set forth below, it is the opinion of this Office that such a use of public funds is permissible.
The specifics of your opinion request are as follows: Lake Henderson ("the Lake"), which is located within the Atchafalaya Basin ("the Basin") in St. Martin Parish, serves as a waterborne gateway for the surrounding region's residents and visitors to reach other areas of the Basin. In other words, there are several docks and access points in and around The Lake that allow vessels to access the Lake and it is from the Lake that many vessels are able to reach the Basin as a whole. The Lake is not, however, a navigable waterway of the State of Louisiana. The Lake is actually an impoundment that was created by damming activities in the 1960s. The northern portion of the Lake's water bottom is federal property and the southern portion of the Lake's water bottom is private property.
During normal conditions, access to the greater Basin watershed is possible through the Lake without the need for the contemplated dredging. However, as is common in many of Louisiana's lakes, hydrilla, an invasive aquatic plant species, is literally choking the Lake.[1] In order to ensure the continued health of the greater Basin watershed and the continued access to the Lake (and through the Lake, the rest of the Basin), the Louisiana Department of Wildlife Fisheries ("DWF") has been conducting a herbicide application program in the Lake since 1996. During these program events, the water level of the Lake must be drawn-down. These draw-downs make it impossible to access the Lake from the *Page 2 
existing docks along the shoreline, thus effectively cutting off the Lake and much of the Basin for vessel traffic during these periods.
In an effort to remedy the access problems created by the DWF draw-downs, plans have been created to dredge several deep channels in and around the docks that are used to access the Lake. These channels would be deeper-draught channels than the rest of the Lake and would retain water during the draw-down periods. The channels would lead to the portion of the Lake that is not affected by the draw-downs, thus permitting continual access to the Lake and the Basin at all times. Although the channels would be dredged channels cut on private property (because they would have to be cut in the area of the Lake that is privately owned), they would provide access to the remainder of the Basin, much of which is constituted of State-owned water bottoms as well as State-owned lands, Corps of Engineers' easements, and school board (16th Section) lands.
Although on its face, this project appears to be one that would benefit the general public you have expressed concerns that the use of public funds and resources to dredge channels on private property may constitute a prohibited use of public funds. Further, the fact that the docks to which these channels will be dredged are privately owned and will, no doubt, benefit as a side-effect of the dredging has caused you concern as to the propriety of the project. These concerns are based on the language of La.Const. Art. VII, Sec. 14(A), which states (in pertinent part) that:
Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
It is based upon this factual scenario and these concerns that you have asked this Office to analyze whether the expenditure of public funds to mitigate the impaired access to public and private lands and water bottoms caused by the necessary DWF draw-downs is permissible under Louisiana law. As we have noted in past opinions, [2] questions of whether the use of public funds for a particular project is permissible under La.Const. Art. VII, Sec. 14(A) are generally controlled by the Louisiana Supreme Court's decision in Board of Directors of the Industrial Development Boardof the City of Gonzales, Louisiana, Inc. v. All Taxpayers, PropertyOwners, Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11 ("Cabela's"). *Page 3 
Under the standards that this Office has adopted to ensure compliance with Cabela's, [3] the following questions will determine whether the proposed expenditure constitutes a permissible expenditure of public funds:
1) Does the expenditure comport with a governmental purpose for which the public entity (in this case, the Department of Natural Resources/Atchafalaya Basin Program) has legal authority to pursue?
2) Does the expenditure, taken as a whole, appear to be gratuitous?
3) Does the public entity have a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure?
The primary focus of this inquiry is to ensure that reciprocal obligations between the public and nonpublic entities involved in a particular transaction or project exist so as to avoid gratuitous donations of public funds. Each of the questions above is analyzed below.
Does the expenditure comport with a governmental purpose forwhich the public entity (in this case, the Department of NaturalResources/Atchafalaya Basin Program) has legal authority topursue?
The Louisiana Department of Natural Resources ("DNR") has the statutory duties of ". . . conservation, management, and development of water, minerals, and other such natural resources of the state, including coastal restoration and management . . ." La.R.S. 36:351(B). This broad charge on DNR derives from the Public Trust Doctrine, which is embodied in La.Const. Art. IX, Sec. 1. The Louisiana Public Trust Doctrine states (in pertinent part) that:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people.
Id. It is clear from a combined reading of DNR's constitutional and statutory charges that that agency has the legal authority to pursue projects that enhance and develop the natural resources of the State. There is no question that the dredging of channels to allow year-round access to both public and private water bottoms facilitates the development and use of the natural resources of this State. Thus, under this prong of the Cabela's analysis, it is our opinion that the proposed Lake Henderson dredging project comports with the Louisiana Constitution and the jurisprudence. *Page 4 
Perhaps more important to the current inquiry are the statutory charges on the Atchafalaya Basin Program ("the Basin Program") within DNR. Under La.R.S. 30:2000.1, et seq., the Basin Program is given the power to coordinate with State, federal, local, and private entities for the protection of and for the enhancement of the use of the Basin, generally. Included within this authority is the power to "operate and maintain public access features" within the Basin. La.R.S. 30:2000.4(B)(3). Such public access features clearly include dredging canals to facilitate public access to the Basin through The Lake. Also important in this inquiry is the statutory authorization to the Basin Program to utilize funds to construct "access projects." La.R.S. 30:2000.12(C).[4]
Based upon the foregoing examination of the authority of DNR and the Basin Program, it is our opinion that the proposed dredging project is consistent with the legal authority of these governmental entities. Accordingly, it is our opinion that the proposed project satisfies this portion of the Cabela's analysis.
Does the expenditure, taken as a whole, appear to begratuitous?
In the current situation, this question largely hinges on the previous inquiry. Although this may not occur in otherCabela's analyses, the fact that parts of the statutory charges on the subject agencies include such things as facilitating "access projects"[5] in the Basin suggests that the proposed project does not appear to be gratuitous. Beyond the statutory charges, there is also a clear public benefit to this project. The project will facilitate the ability of the public to access not only the privately-owned Lake Henderson during the DWF draw-down periods, but it will, more importantly, allow the public to access the public portions of the Basin via The Lake during these periods. These facilitated activities are also consistent with the statutory charges on the Basin Program to enter into project agreements to "improve water quality and fish and wildlife production"[6] and to facilitate tourism-related activities in the Basin.[7]
This proposed project is also calculated to ward off litigation against the State. During similar draw-down operations in Lake Bistineau, in North Louisiana, the State was consistently sued for, among other things, limiting the public's access to the Lake during the draw-downs.[8] Although the State prevailed in these cases, they dragged on for years and represented a significant drain on State time and resources. Because the currently-proposed project will facilitate such *Page 5 
access in The Lake and in the Basin at-large, it is our opinion that this mitigation of legal expenses and exposure to the State indicates that the project does not appear to be gratuitous. In other words, the State is getting a cost savings on legal expenses by going forward with this project — a clearly nongratuitous outcome.
Does the public entity have a demonstrable, objective, andreasonable expectation of receiving at least equivalent value inexchange for the expenditure?
This final prong of the Cabela's inquiry is difficult to address in light of the proposed project. In the end, the State will not receive a definitive dollar amount from this project. However, as noted above, it is highly likely that the State will avoid legal expenses to defend the potential Lake Bistineau-style lawsuits during each draw-down. There is little doubt that this savings amounts to a reasonable expectation of receiving significant value in exchange for the proposed project expenditures. Further, because the project will facilitate the uninterrupted use of the Basin, there is undoubtedly a tax benefit that will inure to the State from the sale of fuel and other products related to the use of the Basin and The Lake that otherwise would not exist if the Lake and Basin were not accessible during the draw-downs.
Again dovetailing back onto the original prong of theCabela's inquiry, it must be borne in mind that the currently-proposed project, though it is one that will be situated on private property, is not one that is calculated to provide a benefit to that property. The purpose of the project is to facilitate access to the Basin — a statutory charge of the Basin Program. Because these types of projects are contemplated in the enabling legislation of the Basin Program and because they are aimed at benefitting the public, the currently-proposed project does not fit the classic definition of something that appears to be a gratuitous donation of public funds to a private party. Indeed, there is no real donation to a private party in this situation at all. There is merely a State agency undertaking a project that is consistent with its statutory authority. Accordingly, it is the opinion of this Office that the third prong of the Cabela's analysis is satisfied by the currently-proposed project.
For the foregoing reasons, it is our opinion that the currently-proposed project for the Basin Program and DNR to dredge deep water avenues in The Lake to facilitate access to the Lake and the Basin watershed is a permissible use of public funds. This analysis had demonstrated that it should be of no moment that the currently-proposed channels are to be constructed on private property when such construction is pursuant to statutory authorization and is in furtherance of accomplishing statutory goals and when the benefits of the proposed construction inure to the public at-large. *Page 6 
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ RYAN M. SEIDEMANN Assistant Attorney General
JDC/RMS/jv
[1] See e.g., Lake Bistineau Preservation Soc., Inc. v. Wildlifeand FisheriesCommission, 39,369 (La.App. 2 Cir. 3/9/05), 895 So.2d 821, cert.denied, 2005-0939 (La. 5/20/05), 902 So.2d 1057.
[2] See e.g., La. Atty. Gen. Op. Nos. 08-0300; 09-0004.
[3] Id.
[4] "`Access project' means construction or renovation of a boat launch or a roadway that provides access to areas of the Atchafalaya Basin . . ." La.R.S. 30:2000.2(1).
[5] La.R.S. 30:2000.12(C).
[6] La.R.S. 30:2000.4(A)(5)(a) (i.e., facilitating the hydrilla draw-downs).
[7] La.R.S. 30:2000.4(A)(5)(b).
[8] Lake Bistineau Preservation Soc., Inc. v. Wildlife andFisheriesCommission, 39,369 (La.App. 2 Cir. 3/9/05), 895 So.2d 821, cert.denied, 2005-0939 (La. 5/20/05), 902 So.2d 1057; Lake BistineauPreservation Society, Inc. v. Seales, 40,583 (La.App. 2 Cir. 2/10/06),922 So.2d 768, cert.denied, 2006-0620 (La. 5/26/06), 930 So.2d 27.