BROWN, Chief Judge.
| ]The State of Louisiana through the attorney general filed this action against the Town of Jonesboro seeking the appointment of a fiscal administrator for the Town and the issuance of injunctive relief to prevent the Town, its agents, employees, or others acting on its behalf from incurring debts or obligations, paying debts or obligations, and hiring or contracting without the express approval of the fiscal administrator. Judgment was rendered by the trial court granting the preliminary injunction against the Town and appointing a fiscal administrator, William J. Ryder, C.P.A. The Town of Jones-boro through its attorneys has appealed. We affirm.

*220
Discussion

Municipalities, being creatures of the legislature, possess only such powers as are granted to them by the legislature in express words, or those that are necessarily or fairly implied in or are incidental to the powers so expressly conferred. Town of Pineville v. Vandersypen, 212 La. 521, 33 So.2d 56 (La.1947), Higginbotham v. Flood 45,328 (La.App.2d Cir.05/07/10), 36 So.3d 444.
The Louisiana Legislature enacted several laws in 1990 that enable state intervention if a municipality’s fiscal stability is in jeopardy. The state legislative auditor, attorney general, and treasurer will publicly convene to review the struggling municipality’s financial situation. If the three decide that revenues are insufficient to meet outstanding debts, the attorney general will file a rule to appoint a fiscal administrator to take over the local government’s finances. If the court finds that the local government is ^“reasonably certain to fail to make a debt service payment or reasonably certain to not have sufficient revenue to pay current expenditures,” it will appoint a fiscal administrator. La. R.S. 39:1351.
La. R.S. 39:1352 provides that the newly appointed fiscal administrator will investigate the financial situation of the municipality and report his findings to the state treasurer, attorney general, and legislative auditor. This written report will contain the expected revenue and obligations for the remainder of the fiscal year, recommended amendments to the budget to ensure payment of the debt, the estimated deficit in the budget, and a recommendation of whether the local government should be allowed to file for Chapter 9 bankruptcy. La. R.S. 39:1353 provides that within seven days after the local government receives the report, it must vote on the fiscal administrator’s recommended budget changes. If it fails to adopt the recommended changes, the attorney general must ask the court to compel the local government to accept them. Once the new budget is enacted, the fiscal administrator monitors the municipality until he determines that it is fiscally healthy enough to meet its obligations for the current and upcoming years. At that point, the attorney general, local government officials, or the fiscal administrator himself can move to terminate his appointment. La. R.S. 39:1354.
In this case, a fiscal review committee, as authorized by La. R.S. 39:1351, met on March 26, 2012, and unanimously agreed to have the attorney general file a petition for appointment of a fiscal administrator to investigate and manage the Town’s affairs until fiscal stability is restored. |SA Petition For The Appointment Of Fiscal Administrator and For Preliminary and Permanent Injunction was filed by the attorney general on June 28, 2012.
The State prayed for an order appointing a fiscal administrator with all powers and duties as provided in La. R.S. 39:1351-1354, including power to investigate, oversee, and manage the Town’s fiscal affairs. Attached to the petition was an affidavit by Eric Sloan, an assistant legislative auditor. Upon the filing of the petition, the district court ordered the Town to show cause why relief should not be granted.
On July 13, 2012, the Town filed an exception of no cause of action asserting that the petition was based on prior audits and not on any evidence that the Town now lacked sufficient revenues to pay its current expenditures. The Town asserted that it had corrected its past deficiencies and is now operating in a fiscally sound manner.
On July 16, 2012, the Town filed exceptions of prescription, no right of action, *221 and no cause of action. The Town asserted that the petition was untimely because it was filed more than three months after the fiscal review committee met on March 26, 2012, and decided to request appointment of a fiscal administrator.
The exceptions were tried in open court on July 16, 2012. The rule to show cause hearing commenced and was completed on July 17, 2012. The trial court took the matter under advisement. The exceptions were then denied.
l4On July 20, 2012, the Town filed a notice of intent to seek writs from the denial of its exceptions. On July 24, 2012, the trial court denied the request as premature pending a decision on the merits of the case and then rendered judgment with written reasons granting the preliminary injunction against the Town and appointing a fiscal administrator, William J. Ryder, C.P.A.
In its written reasons for judgment, the trial court found that the State proved by a preponderance of the evidence that it was reasonably certain that the Town lacks sufficient revenues to pay its current expenditures. This finding was based on the following:
1. Four consecutive years in which auditors could not render an opinion on the Town’s financial statements and issued disclaimers;
2. Expert testimony, including the Town’s expert (Jonald Walker), that they had a “going concern” relative to the Town’s ability to meet its obligations in light of the state of its debts and revenue;
3. Testimony that the Town had to cash a certificate of deposit (“C.D.”) and access its reserves in order to pay its expenditures and all agreed that CDs are not “revenues” under La. R.S. 39:1351;
4. Testimony that the Town voted to “do away with” the police department due to insufficient funding;
5. Testimony from the Town’s former accountant, Sharetha Houston, regarding the Town’s lack of financial management and its inability to pay it obligations without cashing the C.D.; and
6. The trial court’s concern that exhibits introduced by the Town purported to show revenue and expenses for May 2012 but had no documentation, such as receipts or invoices, to support the numbers on the reports.
| ¡¡The trial court found that “it is abundantly clear that it is reasonably certain that the Town of Jonesboro does not have sufficient revenue to pay its expenditures; therefore, it is this Court’s opinion that an independent fiscal administrator should be appointed for the Town of Jonesboro, in-stanta [sic], otherwise the Town of Jones-boro and its citizens will suffer significant irreparable harm.”
A judgment was rendered on July 24, 2012, appointing William J. Ryder as fiscal administrator and granting a preliminary injunction enjoining the Town or anyone acting on its behalf from incurring or paying debts or obligations and from hiring or contracting without express approval of the fiscal administrator. The fiscal administrator was vested with authority to administer, manage, and oversee the fiscal affairs of the Town and to employ or terminate Town employees to prevent or curtail a deficit. The judgment ordered the Town to provide the fiscal administrator with all information required by law and/or requested by him, with office space, furnishings, equipment, and assistance. Among other things, the judgment authorized the fiscal administrator to institute a system of cash management to maximize investment of idle funds and minimize interest payments and to furnish, if warrant *222 ed, an amended budget for the 2011-2012 fiscal year and subsequent years. It ordered him to prepare a written proposal for the court, the attorney general, and the legislative auditor concerning the revenues and expenditures of the Town.
The Town filed a writ application after rendition of the judgment. By order of August 30, 2012, this court remanded for perfection as an appeal |fiand then subsequently determined by order on September 21, 2012, that this matter should be considered for consolidation with a related lawsuit for argument.[1]
There are two issues in this case: (1) the trial court’s appointment of a fiscal administrator; and (2) the trial court’s granting of a preliminary injunction.
We note that there is precedent for both the appointment of a fiscal administrator and the preliminary injunction. In State v. Mayor and Bd. of Aldermen of City of Tallulah, 549 So.2d 891, 892-3 (La.App. 2d Cir.1989), writ denied, 556 So.2d 39 (La.1990), this court wrote:
In 1986, the State of Louisiana acting through the attorney general filed a petition in district court against the mayor and board of aldermen of the City of Tallulah seeking the appointment of a special city fiscal administrator and an injunction against the mayor and board of aldermen from incurring any debts or paying any debts without the express approval of the fiscal administrator. It was alleged that a state of financial and fiscal emergency existed in that the city could not meet its obligations or provide essential services because of mismanagement and other deficiencies in the operation of city government. A consent judgment was rendered pursuant to an agreement between the state and the city providing for the appointment by the court of a fiscal administrator to administer the fiscal affairs of the city under contract with the city, and granting the injunctive relief, with the court to retain jurisdiction of all matters arising out of the judgment and the related agreement between the city and the fiscal administrator. Myles Hopkins was appointed fiscal administrator under contract with the city.
|7In that case, a citizen/taxpayer filed a petition of intervention, alleging that the fiscal administrator, mayor and board failed to comply with the consent judgment and contract with the fiscal administrator and seeking to compel performance of various governmental actions. Implicitly recognizing the legitimacy of the appointment and injunctions this court affirmed the trial court’s dismissal of the interve-nor’s claim.[2]

Appointment of a fiscal administrator

Exceptions filed by the Town

There is no merit to the exception of no right of action filed by the Town. The State has a real and actual interest in ensuring the financial stability of its political subdivisions. Moreover, La. R.S. 39:1351 provides specific authority for the attorney general at the request of the fis *223 cal review committee to file a rule for appointment of a fiscal administrator.
Likewise there is no merit to the Town’s exception of no cause of action. The cause of action asserted in the petition is specifically provided for under La. R.S. 39:1351. The State alleged in its petition that the conditions for the appointment of a fiscal administrator existed. Taking the allegations of the petition as true, as required on an exception of no cause of action, it is clear that the law provides a remedy and that a cause of action was stated.
Citing La. R.S. 39:1351(A)(3), the Town claims that the petition was untimely because it was filed more than three months after the fiscal review 18committee met on March 26, 2012, and decided to request appointment of a fiscal administrator.
There is no merit to the Town’s exception of prescription. La. R.S. 39:1351(A)(3) does not provide a time period for the attorney general to file the rule for appointment of a fiscal administrator. Under La. R.S. 39:1351, the fiscal review committee can meet as often as necessary to review the financial stability of the state’s political subdivisions. The statute does not limit how often or when the committee can request that the attorney general institute proceedings for appointment of a fiscal administrator. Rather, the time period set forth in the statute refers to when the rule must be heard by the trial court after it is filed. La. R.S. 39:1351(A)(3) states:
Upon the making of such decision, the attorney general shall, on motion in the district court of the domicile of the political subdivision, take a rule on the political subdivision to show cause in not less than ten nor more than twenty days why a fiscal administrator should not be appointed[.]
The period of “not less than ten nor more than twenty days” serves the purpose of protecting the political subdivision’s fisc by having the show cause hearing in a timely fashion once the petition for appointment of a fiscal administrator is filed. The time period does not modify or reference the timing for the filing of the petition by the attorney general. There is no merit to the Town’s claim that the State’s petition was untimely.

Merits

La. R.S. 39:1351(B) provides that the court shall appoint a fiscal administrator for a political subdivision if it finds from the facts and evidence deduced at the hearing of the rule that the political subdivision is | treasonably certain to fail to make a debt service payment or reasonably certain not to have sufficient revenue to pay current expenditures.
Assistant legislative auditor Eric Sloan, Jonesboro Chief of Police Wesley Horton, Jackson Parish Sheriff Andy Brown, and Sharetha Houston, a former accountant for the Town, testified for the State. Witnesses for the Town included Mayor Thompson, Tonya Wade, a C.P.A. who worked with the Town to correct its deficiencies, Melba Holland, the Town Clerk, and Jonald J. Walker, III, a C.P.A. who audited the Town.
Mayor Leslie Thompson testified that he had been the mayor of Jonesboro since 2007. He agreed with the audit reports but stated that the Town had corrected the deficiencies listed in the reports. He stated that the Town had started a payment plan to pay a workers’ compensation coverage debt of more than $100,000. Thus, this was not included in his report. He stated that the Town had sufficient revenues to pay their bills.
*224 The evidence, however, does not support this position.
Audits for the fiscal years ending June 30, 2008, 2009, 2010, and 2011 were seriously delinquent and all contained disclaimers. The last audit for the fiscal year ending June 30, 2011, had a going concern comment as follows: “Increasing demand[s] upon the cash flow of the town have caused the withdrawal of fund reserves to meet ongoing expenditures. The lack of financial statements provided by the mayor and town aldermen in recent preceding years has not allowed adequate planning and monitoring of fiscal activities. Revenue increases would be modest at best. Therefore | ^expenditure reduction is critical for the town to continue as a going concern.”
The last audit for the fiscal year ending June 30, 2011, was prepared by Jonald J. Walker, III, C.P.A. Mr. Walker’s report was issued June 2012. Mr. Walker was called by the Town as a witness. Under direct examination, he testified that, “[T]he going concern, we’re required under our standards to evaluate the ability of the entity to continue as a going concern. Basically, we’re looking at debt obligations, revenues, different items that are brought to our attention that may have a pedding [sic] effect on the entity to meet its obligations.”
Following Mr. Walker’s explanation, the Town’s attorney then asked:
Q. And that would have been for the year ending in June 30, 2011, correct? A. Yes and No. One of the requirements we’re suppose[d] to look at what we refer to subsequent events. Basically any event that occurs from the time period that the ending date of the report to the time that we end our findings and so forth. So in this particular case we will look at subsequent events from June 30, 2011, through whenever we issue our audit report which I think was in early June of this year (2012).
Mr. Walker did review the Town’s budget for the fiscal year 2011-2012, and found that the Town had projected an increase in revenues when for the past two years revenues were actually going down. The Town had to cash in a CD to pay a federal tax hen. He stated that the Town’s overall financial condition was not good, that sales tax revenues were decreasing and there were no rainy day funds.
On cross-examination Mr. Walker testified that a prudent financial manager would not use CDs to pay recurring obligations, that the town was [^delinquent on debts and that he could not verify the reliability or credibility of the documents given to him by the Town. The state’s attorney asked:
Q. And if I used the words reasonably certain that revenue will not meet expenses, does that legal description that we’re talking about here today fairly describe your opinion in this, as I realize you didn’t render an opinion?
A. Right.
Q. Does that fairly describe the import of your disclaimer relative to the Town?
A. Uh-yes, ma’am.
The State’s chief witness was Eric Sloan, a C.P.A. employed by the legislative auditor. Sloan’s involvement with the Town began in August 2009, when the legislative auditor learned that the June 30, 2008, audit would be delinquent[3] and have a disclaimer, which is a “no opinion.”
*225 Sloan’s testimony established that a fiscal emergency existed. In his professional opinion, the Town did not have sufficient revenue to pay its expenditures. Evidence showed that auditors had issued disclaimers for four consecutive years. The most recent audit for the fiscal year ending June 30, 2011, included a “going concern” note.
Sloan testified that he participated in the Compliance Audit, which found significant deficiencies in the Town’s financial management and little progress in resolving the problems noted in the prior audits. According to Sloan, the Town’s accounting records were in disarray. Bank accounts had not been properly reconciled since June 2007. There were discrepancies between the Town’s records and actual account balances. There was no 112clear accounting of dedicated taxes. The Town had stacks of bills and did not know the full extent of its obligations. To address these and the other deficiencies detailed in the Compliance Audit, the legislative auditor and the Town contracted the services of Tonya Wade, a C.P.A., to act as C.F.O. for the Town. Wade served in this capacity from April 14, 2011, until November 2011.
Sloan testified that problems were ongoing when Wade’s contract expired. Once again, the 2011 audit was going to be delinquent. The legislative auditor got information that the Town had cashed a certificate of deposit to pay some bills. It extended Wade’s contract through March 2012 to help the Town complete the 2011 audit. This was done to keep the Town off the noncompliance list that would result in state funds being withheld from it.
Sloan testified that in February 2012 the Town’s sales taxes were not meeting the projected revenues and that expenditures appeared elevated. At a meeting in March 2012, the mayor seemed surprised and indicated that the Town had additional certificates of deposit and was looking at ways to cut expenses. Soon after, the fiscal review committee authorized by La. R.S. 89:1351 met to address the Town’s cash flow concerns. Sloan testified that he obtained information on the Town’s outstanding obligations. As of April 25, 2012, the Town owed over $38,000 in employee withholding taxes to the State and over $3,000 in state sales taxes as verified by affidavits by the Director of Tax Administration for the Department of Revenue. The Town also had unpaid insurance premiums. It owed $15,684.57 for its liability | lsinsurance coverages; this amount had been delinquent since October 31, 2011. Also, it owed $108,132.88 for its 2011 workers’ compensation coverage and monthly payments of $12,328.92 for its 2012 coverage. This information was verified by a letter and affidavit from Stacey Parker, a manager with Risk Management, Inc. The legislative auditor’s office reconciled the Town’s water meter deposits as of March 31, 2012, and found a discrepancy of $85,000 between what the utility system showed had been paid by customers ($136,-000) and what the Town had in its accounts designated for meter deposits ($51,000).
Sloan believed that all of these factors showed the Town to be in a fiscal emergency. He testified that he had “very little” faith in the Town’s financial records and that a reasonably prudent C.P.A. would believe that the Town lacked sufficient revenue to meet its expenses.
Sheretha Houston, an accountant for the Town from March 9, 2011, through June 5, 2012, testified that she worked on reconciling the bank accounts and found numerous errors in the records, such as missing checks and check numbers on the bank statements not matching what was in the Town’s accounting system. In September 2011 the mayor made her responsible for paying bills and doing the payroll. She *226 stated that the Town was late on paying its workers’ compensation and liability insurance premiums, its tax withholdings for employees, and its health insurance premiums. Houston explained that she paid bills if money was available, but there was not money available to pay all that the Town owed. She testified that the Town cashed a certificate of deposit to pay federal | ^withholding taxes. Houston explained that she was terminated when she refused to comply with the mayor’s order to give holiday pay to certain employees who were not eligible for it under the Town’s policy.
Chief Horton testified that the police department’s budget had been cut to the point where there remains funding for only one employee. He testified that he cannot adequately perform law enforcement duties for the Town and that this situation poses a serious threat to the public’s safety and welfare. Sheriff Brown testified that his department was providing law enforcement for the Town, but he indicated that there is no agreement with the Town for payment for such services, and he did not know how long his office could continue to provide services without compensation.
The trial court exercised its sound discretion in weighing the evidence, determining that the conditions of La. R.S. 39:1351(B) were satisfied, and in appointing a fiscal administrator.

Preliminary Injunction

An injunction proceeding is an ordinary proceeding in which the plaintiff seeks a permanent injunction compelling the defendant to do an act or barring him from acting. It invariably includes summary proceedings-the temporary restraining order (TRO) and the preliminary injunction-to compel or bar the disputed act pending a determination on the merits of the ordinary proceeding. Thus the TRO and the preliminary injunction may only be obtained as adjuncts to a suit for permanent injunction. Injunctive relief may be granted in cases where irreparable injury, loss or damage may otherwise result to the applicant, and in other cases specifically provided by |1filaw. La. C.C.P. art. 3601; Frank L. Maraist, 1A La. Civ. L. Treatise, Civil Procedure-Special Proceedings, § 1.2 (2012 ed.)
A preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of the case. Lake Bistineau Preservation Soc., Inc. v. Seales, 40,583 (La.App.2d Cir.02/10/06), 922 So.2d 768, writ denied, 06-0620 (La.05/26/06), 930 So.2d 27. The courts have generally held that a preliminary injunction is designed to preserve the status quo pending a trial of the issues on the merits of the case. Lake Bistineau, supra; Silliman Private School Corp. v. Shareholder Group, 00-0065 (La.App.1st Cir.02/16/01), 789 So.2d 20, writ denied, 01-0594 (La.03/30/01), 788 So.2d 1194. Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue; this is accomplished by a prima facie showing that the party will prevail on the merits of the case. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270 (La.App.1st Cir.03/24/05), 906 So.2d 660. A showing of irreparable injury is not necessary, however, when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or violation of a constitutional right. Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597.
La. R.S. 39:1352 provides that a fiscal administrator shall perform such investigation of the financial affairs of the political subdivision as he deems necessary. He shall have access to all papers, books, rec *227 ords, |1fidocuments, films, tapes, and other forms of recordation of the political subdivision or, as they relate to such political subdivision, of the state. After his investigation, the fiscal administrator shall file a written report with the court, the governing authority of the political subdivision, the state treasurer, the attorney general, and the legislative auditor.
The report shall contain the following: an estimate of the revenues and expenditures of the political subdivision for the remainder of its current fiscal year and the fiscal year following; amendments to the comprehensive budget of the political subdivision adopted pursuant to La. R.S. 39:1309, or a proposed comprehensive budget if such budget has not been previously adopted, which will insure that payments of debt service are a priority budget item and that they will be timely made by the political subdivision during the remainder of the current fiscal year and the fiscal year following or such amendments which will insure having sufficient revenue to pay current expenditures, excluding civil judgments; and, a recommendation as to whether the political subdivision should be permitted to file a petition in a court of bankruptcy of the United States in order to provide for a readjustment of its debts.
La. R.S. 39:1353 requires that within seven days after receipt of the report, the governing authority of the political subdivision shall adopt in an open meeting an appropriate budget adoption instrument which contains the comprehensive budget, or amendments to the original comprehensive budget of the political subdivision, as proposed in the fiscal administrator’s report. If the governing authority of the political subdivision fails to adopt |17such budget or budget amendments, or if the revisions made by the governing authority of the political subdivision do not meet the approval of the fiscal administrator, the attorney general shall take a rule against the political subdivision in the manner provided for in La. R.S. 39:1351 to show cause why the court should not order the adoption and the implementation of the budget without the revisions disapproved by the fiscal administrator. The court shall order the adoption and implementation of the budget proposed by the fiscal administrator as revised by the governing authority of the political subdivision, except for those revisions which the court finds will make it reasonably certain that the political subdivision will fail to make timely debt service payments or reasonably certain to fail to have sufficient revenue to pay current expenditures, excluding civil judgments.
The trial court specifically found an immediate need for the appointment of a fiscal administrator, otherwise “the Town of Jonesboro and its citizens will suffer significant irreparable harm.” In the instant case the Town wants to overrule the fiscal administrator and spend money that it does not have. The conduct sought to be restrained constitutes a direct violation of the duties required of the fiscal administrator.
A fiscal emergency exists. The Town has been monitored by the legislative auditor since 2008; however, its fiscal condition has consistently deteriorated. The preliminary injunction was issued to allow the fiscal administrator to perform his duties. Without the injunction, the fiscal administrator would be useless.
| iSFor the reason explained herein, we agree with the necessity for the issuance of the preliminary injunction; otherwise, the Town and its citizens will suffer significant irreparable harm.
The fiscal administrator has certain time restraint duties, and this preliminary injunction is in place to allow him to com- *228 píete his responsibilities as set forth in La. R.S. 39:1352.

Conclusion

The decision of the trial court is affirmed in all respects.
STEWART, J., concurs in part and dissents in part with written reasons to follow.

. Donald. L. Essmeier, et al. v. Town of Jonesboro, et al., 108 So.3d 209 (La.App. 2 Cir.2012). This case arises from a suit by citizens against the Town of Jonesboro, Mayor Leslie Thompson, and Aldermen Lastevic Cotton-ham, Devin Flowers, and Charla Thompson concerning the passage of ordinances amending the budget for the 2010-2011 fiscal year which increased the mayor’s salary from $35,000 to $70,000. At issue was whether the actions of the defendants violated the Louisiana Local Government Budget Act ("LLGBA”), La. R.S. 39:1301 et seq. The Town appealed the trial court's ruling in favor of plaintiffs.

. The year after this decision, the legislature enacted La. R.S. 39:1351, etseq.

. La. R.S. 24:513(A)(5)(a)(i) requires audits to be completed within six months of the close of the entity's fiscal year.